## JOSEPH FISHER, SURVIVING TRUSTEE, v. THE NATIONAL BANK OF NEW JERSEY.

Fisher, the plaintiff, and Hill, as trustees of the estate of Ira C. Voorhees, held nine railroad coupon bonds, which were deposited by them, for safe keeping, in the defendant bank.

Hill was also cashier of the bank. Without the knowledge of the president or any director of the bank, Hill took from the bank a sum of money, for which he put in the bank his own note, which he kept in his custody as cashier.

The transaction did not appear on the books of the bank. The note purported to pledge, as security for its payment, nine bonds of the description of those deposited by the trustees.

After Hill's death the note was found by the officers of the bank, but the bonds did not accompany it. They were found in a separate envelope, endorsed " C. S. Hill," with the name " Ira C. Voorhees " written on the bonds in his own hand.

It did not appear that the president of the bank, or either of the directors had ever seen or had any knowledge of the note or bonds in Hill's lifetime. *Held*, that the plaintiff was entitled to recover the bonds from the bank in the absence of proof to establish an actual delivery of the bonds by Hill to the bank. The case distinguished from *First National Bank* v. *Christopher*, 11 *Vroom* 435.

In replevin. On rule to show cause.

Argued at February Term, 1886, before BEASLEY, CHIEF JUSTICE, and Justice VAN SYCKEL.

For the plaintiff, *A. V. Schenck* and *Chas. H. Mundy.*

For the defendant, *Alan H. Strong.*

The opinion of the court was delivered by

VAN SYCKEL, J. This is an action of replevin brought by Joseph Fisher, surviving trustee of Ira. C. Voorhees, to recover nine railroad coupon bonds for $1000 each, issued by the Jeffersonville, Madison and Indianapolis Railroad. The question as to the legal title to these bonds is involved in this case. It is admitted that they belonged to Voorhees in his lifetime, and that after his death they passed into the hands of Joseph Fisher and Charles S. Hill, trustees under the will of said deceased.

The trustees deposited these bonds, for safe keeping, in the vault of the defendant bank, of which the said Charles S. Hill was the cashier. They were in a box furnished by Hill, of which he had the key. Hill continued to cut off the coupons, as they became due, and deposited the proceeds thereof to the credit of the trustees up to the date of his death, which occurred September 4th, 1884.

The coupons due October 1st, 1884, were then, and still are attached to the bonds. After Hill's death he was found to have been a defaulter to the bank to a large amount.

His note to the bank for $9000, dated July 2d, 1883, with a collateral clause in the body of it, is as follows :

"NEW BRUNSWICK, N. J., July 2d, 1883.

" $9000.    On demand after date, for value received, I promise to pay to the National Bank of New Jersey, or to the order of their cashier, at their banking-house, nine thousand dollars, I having deposited with them, as collateral security for the payment thereof, nine Jeffersonville, Madison and Indianapolis Railroad Company's bonds, 1 M. Ea.,. with authority in case of the nonperformance of this promise, to sell the same, without notice, at public or private sale, applying the net proceeds to the payment of this note, including any interest that shall have accrued, accounting to me for the surplus and holding me for the deficiency, if any.  .

.." C. S. HILL."

Endorsed as follows :
" Interest paid to January 1st, 1884.
Interest paid to July 1st, 1884."

These endorsements are shown to be in the handwriting of Campbell, the discount clerk and bookkeeper of the bank. This note did not go before the board of directors of the defendant bank.   There is nothing upon the books of the bank to show that in the regular course of business it was presented for discount; but it represented a loan or discount to Hill which does not appear to his credit on the books of the bank, but which Campbell says is required to make up the bank balance.   Campbell says he never saw the collaterals named in the note until after Hill's death, when they were found in the safe of the bank, enclosed in an envelope, on the top shelf.  The envelope had on it " C. S. Hill," in lead pencil in his handwriting.  The note was in the place such notes were usually kept, in a box, which was placed in the safe over night and brought out every morning.   The bonds were not in the box with the note, nor in any way attached to them.

The note, excepting the printed part, and also excepting the description of the collaterals, is in the handwriting of Hill, and when given was in blank as to collaterals.

Campbell says he found the note about a week after its date and called Hill's attention to the omission of the collaterals, and that he then, by·Hill's direction, inserted the description of the nine bonds. He testifies that at that time he did not see the bonds, but that the bonds in suit are the only ones of that description in the bank. It is also shown that Hill's note was discounted by himself without laying it ·before the board ·of directors, and that he ordinarily discounted demand notes for·others in that way. It does not appear that the president of the bank, or the board of directors, or any one of them, ever saw or had any knowledge of this note, or of the collaterals which w,ere˙said to be pledged as security for its payment, or of the endorsement upon the bonds of the name of Ira C. Voorhees, in his own handwriting, excepting Hill himself, who was cashier and a member of the board.

It is conceded that railroad coupon bonds payable to bearer, like commercial paper or bank bills, pass by delivery, and that the purchaser of such bonds in good faith for value, without actual notice of any defect in the title, can hold them against the true owner.

The president and˙ directors of the bank being without knowledge of the fraud perpetrated by Hill, it is insisted, under the authority of the *First National Bank* v. *Christopher*, 11 *Vroom* 435, that the title of˙ the bank is untainted by the fact that the bank cashier misappropriated the bonds in breach of his trust.

In the case cited it was properly held that a director offering for discount a note of which he is the owner to the bank of which he is a director, is regarded in the transaction.as a stranger, and the bank is not chargeable with the knowledge of such director of an infirmity or defect in the consideration of the note. There the maker of the note put it in the power of the director to deceive his bank, and he did .deceive the bank by procuring the board of directors to discount the note.

The bank was the innocent party, and the maker of the note was required to bear the loss, which his own imprudence enabled another to inflict.

This case would be parallel if Hill had presented his note with the collaterals to the board of directors, and through them obtained from the bank the proceeds of the discount of it.

But Hill, without the knowledge of the bank, committed the fraud. The bank was not deceived; it had no knowledge of the transaction. This is not a case where bonds were taken in good faith for valuable consideration without notice. The bank did not take them relying on the title of Hill; the bank did not even know of their existence.

The trial judge properly submitted to the jury the question whether these bonds were delivered to the bank, so that they became the lawful holders of them, and that question was rightly decided, under the evidence, in the negative.

The burden was upon the bank to show the fact of delivery. The bonds belonged to the estate of Voorhees, and were placed in the vault of the bank for safe keeping. After Hill's death they were found in the time-lock safe of the bank, in an envelope endorsed " C. S. Hill."

There was nothing to indicate any ownership on the part of the bank, or to repel the presumption that must follow them while in Hill's hands, until it is overcome by affirmative evidence, that he held them as trustee of and for the estate of Voorhees.

His possession was the possession of the trustees. His mark upon the envelope containing them indicated that they were held by him, not as cashier of the bank, but under his own personal control. His note to the bank purports to pledge nine bonds corresponding with these in description, but having no right to transfer these bonds, the property of the real owner was not divested by the recital in the note. It required an actual delivery, or passing of the property from the hands of Hill to the possession of the bank to vest the

title in the latter. The bank did not accept them or know of the promise to pledge them.

The acts of Hill after the date of the note repel the inference that he had surrendered the custody of the bonds to the bank. After that date the trustees accounted for these bonds as part of the Voorhees estate in their hands, and the coupons were credited to the account of the trustees in the bank down to September, 1884.

It seems to be manifest that Hill retained, and intended to retain possession and control of these bonds, so that he could produce them if called to account for the Voorhees estate, or deliver them to the bank directors, if they called upon him for the collaterals mentioned in his note.

He prepared himself for either contingency. Having no right to pledge the bonds or part with the posssession of them, the law will imply, that so long as they remained in Hill's custody, under the circumstances stated, he held them as trustee for the Voorhees estate.. The fraudulent transfer of them was thus far only contemplated, not fully consummated. There is consequently a lack of evidence to establish a delivery to the bank.

The rule to show cause should be discharged.